IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-02606-LTB

MONTE SPRINGER,

       Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

       Defendant.

_____

ORDER
_____

Plaintiff, Monte Springer, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for Supplement Security Income ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his application for SSI filed in November 2008. [Administrative Record ("AR") 126] After the application was initially denied, an Administrative Law Judge ("ALJ") conducted an evidentiary hearing on June 8, 2010, and issued a written ruling on June 28, 2010. [AR 17-26, 33-55] The ALJ denied Plaintiff's application on the basis that he was not disabled because he is capable of performing past relevant work – as a Cashier II and as a Telephone Maintenance Mechanic – in that he

retained the Residual Functional Capacity ("RFC") to perform medium work (Step Four). [AR 25]  The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1]  *See* 20 C.F.R. § 416.1481.  Plaintiff timely filed his complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in April of 1955, and had obtained a G.E.D.  [AR 34, 126]  His past relevant work history was primarily in the telecommunications field, as well as a cashier and a intercom system installer. [AR 34, 44, 90]  Plaintiff initially alleged that he became disabled on August 1, 2006, but at the hearing he agreed that his onset date should be November 21, 2008, the date that his application was protectively filed.  [AR 126, 33]

The medical records in this case commence when Plaintiff went to urgent care, while living in Texas, on February 20, 2007, complaining of chest pain and shortness of breath. [AR 217]  Plaintiff was diagnosed with hypertension, coronary artery disease, and it was determined at that time that he was diabetic.  Upon discharge, Plaintiff was given medications and was advised about changing his lifestyle and told to find a primary care physician. [AR 212-17]

In June 2007, Plaintiff was again admitted to a hospital in Texas with progressive chest discomfort, and underwent a cardiac catherization, which revealed 30% stenosis in his left anterior descending artery. [AR 402-405, 441, 434-35]  Following this procedure, Plaintiff saw a primary care physician, Neil Lovitt, M.D – in December 2007, June 2008, October 2008, and September 2009 – for management of his diabetes, hypertension, peripheral neuropathy and tobacco abuse. [AR 381-383, 422-426]  Plaintiff also obtained follow-up treatment for his

"mild" coronary artery disease from Rim Bannout, M.D., in August and November of 2007, during which time he was not taking his prescribed medications because, at least in part, he could not afford them. [AR 379-405, 418-42, 437-38]  Plaintiff began taking his medications and, during his February 2008 visit, Dr. Bannout indicated that now that he was being compliant, his blood pressure and cholesterol had improved "significantly." [AR 395-97]  At his next visit in February of 2009, his was taking his medications and was "stable from a cardiac point of view." [AR 396]

During this time, in January 2009, Wheatley Beard, M.D. and May Lanette Rees, M.D. – both non-examining state agency medical consultants – reviewed Plaintiff's medical records and concluded that Plaintiff was capable of performing work at the medium exertion level. [AR 195, 202]  Specifically, after reviewing his medical records to evaluate Plaintiff's current RFC assessment, Dr. Beard opined – in a Physical Residual Functional Capacity Assessment form dated January 14, 2009 – that Plaintiff's exertional limitations were that he was capable of: occasionally lifting/carrying 50 pounds, frequently lifting/carrying 25 pounds; standing or walking about 6 hours in an 8-hour workday; sitting for about 6 hours in a 8-hour work day; and unlimited pushing and/or pulling.  When explaining "how and why the evidence support[ed]" these conclusions, Dr. Beard indicated only "MILD CAD, asymptomatic." [AR 195] Dr. Beard further opined that Plaintiff had no other postural, manipulative, visual, communicative or environmental limitations. [AR 194-201]   In a two-page form entitled "Medical Consultant's Review of Physical Residual Functional Capacity Assessment," Dr. Rees checked the boxes indicating that she "agreed" with Dr. Beard's limitations assessments, determinations and conclusions, without further comment, on January 20, 2009. [AR 202-03]

Thereafter, Plaintiff relocated to Colorado and began seeking medical care in June of 2009 from The Peoples Medical Clinic. [AR 371-76]  At that time, Eric Boysen, M.D., completed a Colorado Department of Human Services  "MED-9" form – for Plaintiff's application seeking benefits from the state – opining that Plaintiff was "disabled" for a period of six months, beginning two years earlier, in 2007. [AR 407]  Dr. Boysen did not give any further explanation beyond checking the box.  In a earlier section of the form, apparently completed by Plaintiff himself, Plaintiff wrote that he experienced "severe" diabetic neuropathy and that his "hands and feet don't work." [AR 407]

Thereafter, the records reveal that Plaintiff reported to The Peoples Medical Clinic approximately monthly – from June 2009 through January 2011– for management of his chronic heart disease, high cholesterol, diabetes, neuropathy, and depression. [AR 359-77, 445-54, 470-98]  Plaintiff was generally seen by Pamela Guthrie, M.D.  In June 2009, Plaintiff reported that he was experiencing dysesthesias which was noted as numbness, tingling, burning and sharp pain. [AR 374]  In early August 2009, Plaintiff reported that his foot pain was improving. [AR 364]  But later that month a physician's assistant reported "extreme pain with light touch" on examination of his feet, with decreased pulse but good perfusion. [AR 360-61]  At that time, the physician's assistant noted that there was "[c]oncern for exaggerated pain response" and thus would "limit narcotics." [AR 361]   In September 2009, Dr. Guthrie diagnosed Plaintiff as having "diabetics neuropathy which causes severe pain with prolonged standing or sitting" in a letter supporting Plaintiff's request for a discounted bus pass. [AR 354]  In his October 2009 office visit, Plaintiff reported he had little activity due to the pain in his feet. [AR 358]  In December 2009, Plaintiff reported he was "walking a lot" but also that his neuropathy limited his

"mobility and function[ing]" and that after walking about a block, he would need to stop. [AR 451-52] Dr. Guthrie observed that Plaintiff walked out of the clinic using a cane, with a slight "roll" to his gait. [AR 452] She also noted that although she signed his disability form, indicating that he was disabled "for 24 months," she thought that "some job is possible with tuning up of heart, lungs, and full [diabetes treatment] but would need to be on consistent med[ications] and prob[ably] re-trained." [AR 452]

The following month, in January 2010, Plaintiff told Dr. Guthrie that "he has been walking at times" and was "[g]etting more exercise" but complained that his legs would "give out" in the hamstring area. [AR 448] Treatment records from that visit reveal decreased or absent pulses in his lower extremities and that his feet were painful to touch, as well as "mild laxity medial coll lig on left, but otherwise maneuvers normal." [AR 449] In May 2010, Plaintiff reported that he couldn't pull a grocery cart, that he was experiencing "increasing limitations with painful walking" and that his feet were "worse" and his "bilat increasing pain to point can hardly walk." [AR 476] After that visit, Dr. Guthrie completed a state MED-9 form, dated May 4, 2010, on which she checked a box indicating that Plaintiff "has been or will be totally and permanently disabled" without further explanation. [AR 464] In July 2010, Plaintiff reported that his feet were a "little less painful" but again had decreased or absent pulses, and the treatment notes from October 2010 indicate he was using a cane. [AR 483, 490]

Also during this time, Plaintiff's medical records reveal that he began receiving treatment for neck/shoulder pain and tenderness, commencing in July of 2009. [AR 367-68] Examination in August 2009 revealed neck pain and shoulder stiffness that resulted in reduced range of motion. [AR 364-5] In September 2009, Plaintiff went to the emergency room for neck pain – x-

5

ray views were taken that showed degenerative disc and joint disease at two levels of Plaintiff's cervical spine. [AR 410-11, 416]  Plaintiff received his first injection for shoulder pain in October 2009, and received another cortisone shot in his shoulder in early 2010, which he reported did not help. [AR 359, 446, 473, 492]

Additionally, the medical records reveal that Plaintiff sought mental health treatment in March 2010, when he was diagnosed with Major Depressive Disorder - Single Episode, and was provided medication and a treatment plan. [AR 456-59]  At that time his GAF was assessed at "65 - Mild Symptoms." [AR 458]  In a psychiatric evaluation in May 2010, Plaintiff stated that he had been depressed for ten years, that his depression affected his sleep, and that he had been working with a counselor.  [AR 466-68]

At the hearing in June 2010, Plaintiff testified that had severe neuropathy in both his hands and feet, that had gotten progressively worse since 2005, leading to increased and constant pain. [AR 41, 43]  The resulting limitations were that he could only walk 100 yards, via little steps, over a 15 minute period before stopping; he could stand for only 45 minutes at a time; he could make a fist, but not hold it for long periods of time, but could open a door and pick up coins from a table. [AR 41-43]  He also testified that he had problems reaching due to damage in his shoulder/neck commencing in 2005. [AR 43]  He further testified that he needed to, at times, lay down during the day, and that he often needed to put his feet up to ease pain and pressure. [AR 44-45, 51]  He also testified as to his recent mental health treatment for his depression, including weekly therapy and medications.  He noted that he has problems with focus, forgetfulness and retaining information. [AR 47, 51]

Plaintiff further testified that he lived in transitional/community housing, and that he transported by bus, was able to microwave his meals, and could provide his own self-care, although it was "difficult." [AR 45]  He indicated that he could probably lift no more than 5 pounds, and maybe hold 15 pounds if using both hands. [AR 46]  He testified that he uses an electric cart because his feet hurt and he is unable to walk the length of the grocery store. [AR 50]

### III. LAW

Title XVI of the Social Security Act provides SSI benefits to individuals suffering from a long-term disability and who have income and resources below specified amounts. 20 C.F.R. § 416.110(a).  A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct.  2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If he is, disability benefits are denied.  *See* 20 C.F.R. § 416.920.  Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c).  If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude

substantial gainful employment.  *See* 20 C.F.R. § 416.920(d).  If the impairment is not listed, he is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that his impairment(s) and assessed RFC prevent him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(e)& (f).  Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience.  *See* 20 C.F.R. § 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity at any relevant (Step One). [AR 19]  The ALJ further determined that Plaintiff had the severe impairments of neuropathy, hypertension, and coronary artery disease (Step Two), but that these impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 20]   The ALJ then determined that in light of Plaintiff's ability to perform the full range of medium work, he could perform his past relevant work as a cashier and a telephone maintenance mechanic (Step Four). [AR 21-25]   As a result, the ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and, therefore, was not under disability as defined by the SSA. [AR 26]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903,

905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

I first address Plaintiff's argument on appeal that the ALJ erred when he rejected the opinions of treating physicians – Drs. Boysen and Guthrie – and, instead, adopted the opinions of the non-examining medical consultants – Drs. Beard and Rees – in assessing Plaintiff's physical ability to work.  As such, Plaintiff argues that the ALJ's RFC assessment – that he is capable of performing a full range of work at the medium exertion level – is not supported by substantial evidence.  Because I conclude that the ALJ's assessment/legal analysis of the medical opinion evidence is insufficient, I agree with Plaintiff that the ALJ erred in assessing his RFC and, as

such, reversal is warranted.

As discussed *supra*, Dr. Beard – a state agency medical consultant – reviewed the medical evidence and opined that Plaintiff's exertional limitations, as of January 14, 2009, rendered him able to perform medium work based only on his mild, asymptomatic coronary artery disease. [AR 194-202, 195]  A week later, on January 20, 2009, another non-examining consultant, Dr. Rees, indicated that she agreed with the assessed limitations, without further comment or analysis. [AR 203-04]  The ALJ relied upon these opinions when finding that Plaintiff retain the RFC to perform the full range of medium work. [AR 21, 25]  Specifically, the ALJ's order states that:

> The undersigned accords great weight to the opinions of Drs. Beard and Rees, as they are highly qualified physicians with extensive knowledge of the Social Security disability program, who had the opportunity to thoroughly examine and evaluate all of the claimant's medical records.  Although these opinions are considered non-examining expert opinions, they are entitled to great weight as they contain clearly stated functional conclusions based upon evidence, and are supported by the objective findings of record. [AR 25]

In so doing, the ALJ rejected the opinions of Plaintiff's treating physicians indicating that he was disabled on the MED-9 forms.  As discussed *supra*, Dr. Boysen at The Peoples Clinic opined that Plaintiff was disabled – by checking a box and signing a MED-9 form for assessing eligibility for state benefits on June 10, 2009 – indicating that: "I find this individual have been or will be disabled for a period of 6 months or longer to the extent that they are unable to work at any job due to a physical or mental impairment." [AR 407]  He noted Plaintiff's prognosis as: expected to be disabled for a "6" month period, and that the onset date of disability was "2007." [AR 407]  Approximately a year later, on May 4, 2010, Dr. Guthrie at The Peoples Clinic checked the box on Plaintiff's MED-9 form that states "I find this individual has been or will be

totally and permanently disabled to the extent that they are unable to work at any job due to a physical or mental impairment." [AR 464]

In evaluating these records, the ALJ noted that while these statements constituted opinions from acceptable medical sources, "statements by treating doctors that a claimant is disabled or unable to work are not medical opinions . . . [a]s opinions on issues reserved for the Commissioner of Social Security, they are not given any special significance." [AR 25]  In addition, the ALJ determined that such statements

> may be disregarded or given little weight when they are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques, or are otherwise unsupported by evidence.  Because the MED-9 forms do not reference particular objective clinical findings, and do not mention any functional testing maneuvers, they are given little weight.  The overall medical evidence does not support the opinions of disability contained in the MED-9 forms filled out by Drs. Boysen and Guthrie, but instead shows the claimant to have full strength and normal reflexes in his extremities. [AR 25]

Finally, the ALJ noted that Dr. Guthrie's treatment records in December 2009 indicate that although she had signed a disability form for Plaintiff, she believed that "some job is possible with tuning up of heart, lungs, and full DM tx, but would need to be on consistent meds and prob retrained." [AR 25, 452]

The law for evaluating opinions of a physician who has treated a claimant (a treating physician or source), a physician who has examined a claimant but never had a treatment relationship (non-treating physician or source), and physician who has merely reviewed the medical records (a non-examining physician or source) is as follows.  A treating physician is expected to have greater insight into the patient's medical condition and, as such, his or her opinion is generally entitled to "particular weight." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th

Cir. 2003). Therefore, if the Commissioner "find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimants] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003)(*citing* Social Security Ruling 96–2p). If the treating physician's opinion is deficient in that it is either not well-supported by medically acceptable diagnostic techniques, or it is inconsistent with the other substantial evidence in the record, as the ALJ found here, then it is not entitled to controlling weight. *Watkins v. Barnhart*, *supra*.

Plaintiff challenges the ALJ's conclusion that the treating physician opinions were not entitled to controlling weight because they were not supported by clinical and laboratory diagnostic techniques and were inconsistent with the other substantial evidence in the record. I agree with Plaintiff that the ALJ's order is lacking in identifying the record evidence supporting his conclusion that the "overall medical evidence does not support the opinions of disability . . . by Drs. Boysen and Guthrie, but instead shows the claimant to have full strength and normal reflexes in his extremities." [AR 25] However, regardless of whether the ALJ erred in determining that those opinions were not entitled to controlling weight, I conclude that the ALJ failed to apply the correct legal standards in weighing those opinions against other medical evidence to the contrary.

Even if the treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §416.927." *Watkins v. Barnhart*, *supra,* 350 F.3d at 1301. Those factors are: (1) length of treatment relationship and

frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 416.927(d)(2–6); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)(*citing Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)). After considering these factors, the ALJ must give the reasons in the decision for the weight he gives the treating source opinion. *Watkins v. Barnhart*, *supra*, 350 F.3d at 1301. "[I]f the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Id.* (*citing Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)(*quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

In rejecting the opinions of Plaintiff's treating physicians, the ALJ failed to analyze the weight to be given those opinions using the factors set forth in 20 C.F.R. §§ 416.927(d)(2–6). *See Goatcher v. U.S. Dept. of Health, supra,* 52 F.3d at 291 (ruling that when a "treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around")(quotations and alterations omitted); *see also Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004)("[e]ven if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright"). In addition, I agree with Plaintiff that the ALJ's reliance upon the opinions of the non-examining, consultive physicians – when assessing his physical limitations as related to his RFC –

constituted error when those opinions were completed one and one-half years prior to the ALJ's decision; were only expressed by the checking of boxes; failed to provide any specific record support or evidence for the conclusions; and were based only on Plaintiff's coronary artery disease and did not mention any of his other diagnosis, including neuropathy.  *See Lee v. Barnhart*, 117 Fed.Appx. 674, 678 (10th Cir 2004)(unpublished)(indicating that if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence"); *Baker v. Barnhart*, 84 Fed.Appx. 10, 13–14 (10th Cir. 2003)(unpublished).

      Furthermore, I agree with Plaintiff that the ALJ also erred in failing to re-contact his treating physicians for more information.  The ALJ is required to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  Social Security Ruling 96-8p; *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740 (10th Cir. 2007); *Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir. 2003)(both unpublished). The ALJ's duty to develop the record may include obtaining additional evidence from a treating physician or ordering a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding.  In so doing, I reject the Commissioner's argument that because the ALJ was able to review the physicians' treatment notes during the time period at issue, the ALJ was not required to re-contact his treating physicians.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)(ruling that because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where the claimant is represented by counsel); *accord Hawkins v. Chater*, 113 F.3d 1162, 1164, 1168 (10th Cir. 1997).

I conclude that the ALJ's order fails to reveal that he afforded proper deference to the opinions of the treating physicians, or that his reliance on the non-examining physician's opinion was supported by the medical record.  In addition, I find that the ALJ erred in failing to re-contact Plaintiff's treating physician or order a consultative examination when, as here, the record does not otherwise contain sufficient evidence upon which to base an RFC finding.

"The ALJ's failure to apply the correct legal standards or to provide the court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005); *see also Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)("[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal")(internal quotations omitted and emphasis added).

On remand, I direct the Commissioner to address Plaintiff's argument that the ALJ erred when assessing his credibility.  Specifically, Plaintiff argues that the ALJ failed to properly weigh the medical evidence associated with his subjective allegations of pain, and the resulting functional limitations, as well as improperly relied upon evidence of his failure to take his medications without providing analysis of the reasons or excuses for such non-compliance.  *See Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993)("before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse")(*quoting Frey v. Bowen*, *supra*, 816 F.2d 508); *but see Qualls v. Apfel*, *supra*, 206 F.3d at 1372 (finding it proper

15

to consider what attempts were made by the plaintiff to relieve his pain when evaluating the veracity of the claim that his severe pain was disabling).

Accordingly, for the foregoing reasons, I REVERSE the Commissioner's final order, and I REMAND the matter to the Commissioner for further proceedings consistent with this order and judgment.

Dated: February __7__, 2013 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE